WILLIAM HUGHLETT,

*vs.*

MARY HARRIS, JOHN HARRIS AND JAMES HARRIS.

*Kent, July T.* 1830.

A judgment creditor, having obtained an injunction to restrain the commission of waste upon lands which were subject to the lien of his judgment, afterwards and pending the injunction purchased the premises at sheriff's sale in execution of the judgment. *Held*, that the party committing the waste was not liable in equity to account to the purchaser for the waste committed prior to the purchase.

A title to the land at the time of waste committed is necessary in order to sustain the right to an account for the waste.

The principle that where an injunction is granted to restrain a wrong, equity will give full relief in order to prevent a multiplicity of suits, is limited to cases in which there exists a right in equity to relief for the wrong already done, independently of the pendency of an injunction to prevent future wrong.

BILL FOR AN ACCOUNT OF WASTE.—William Hughlett, in the years 1807 and 1808, sold and conveyed to Richard S. Harris, two tracts of land, situated in Kent county, one for the sum of $1,600.00, and the other for $4,154.50, taking for the purchase money two judgment bonds payable in long instalments. Judgments were entered on both bonds. On the 4th of June, 1827, Richard S. Harris died, having previously conveyed the lands in question to his sons, John Harris and James Harris, two of the defendants. After the father's death the sons proceeded to make considerable alterations in the condition of the property, cutting off the timber, removing fences, &c. They also made some improvements. The purchase money secured to Hughlett by the two judgments remaining unpaid, he filed a bill in equity for an injunction to

restrain the commission of further waste. The injunction was issued Aug. 25th, 1827. Afterwards, and pending the injunction the premises were sold at sheriff's sale, in execution of the judgments, and was purchased by Hughlett for $1,825.00. Hughlett took a deed from the sheriff dated October 21st, 1828. The bill upon which the injunction was ordered prayed additionally a decree that the defendants, John Harris and James Harris, should account and make satisfaction for the waste committed. Mary Harris was joined in the bill as the widow of Richard S. Harris.

Depositions on both sides touching the waste committed were read at the hearing. On the part of the defendants testimony was adduced to shew that on the whole the property was improved in value by the acts complained of.

The answer of the defendants relied chiefly upon an objection to the jurisdiction of the Court to relieve the complainant who, at the filing of his bill, was without title to the land. The answer alleged, as a further defence, that by the acts complained of in the bill the property had been benefited.

Issues were joined and depositions taken, proving the waste. On the part of the defendants there was testimony tending to shew that the property had been, on the whole, improved in value by the defendants, John and James Harris.

The cause came before the Chancellor, at the July Term, 1830, for a hearing upon the bill, answer and depositions.

*M. W. Bates* and *H. Stout,* for the complainant.

The question is whether the Court has jurisdiction to decree an account and satisfaction for the waste, the complainant not having title to the premises when the waste was committed. We rest the jurisdiction on three grounds :

1. The Court has unquestionable jurisdiction to restrain waste by an injunction, in order to the protection of a lien on the premises.   Having the case thus before it, the Court will decree full relief, to the extent of an account and satisfaction for the waste done.   The jurisdiction proceeds upon the ground of preventing a multiplicity of suits.   1 *Madd. Ch. P.* 149 : 2 *Chanc. Cas.* 37 : *Francis' Maxims* 42: 3 *Atk.* 381 : 1 *Ves. Jr.* 81 : 1 *Johns. Ch. Rep.* 145.   In the latter case an issue was directed to ascertain damages ; for which the Court has power, if requisite.

2. The Court may relieve on the ground of *fraud*.   Here is a large debt, on which not so much as interest has been paid in full, and the premises in question are the only security.   The defendants, taking advantage of the creditor's indulgence, have reduced the value of the security with notice of the lien.   They must be taken to have had notice of a lien of record.

3. The defendants are liable to account as executors *de son tort*, having cut and converted the timber, in the absence of any administration upon the estate of Richard S. Harris.

*John M. Clayton*, for the defendants.

1. This is not a case of waste.   The complainant had no title to the land.   Waste is an injury done to the inheritance of another.   The inheritance was in the defendants at the time of the acts complained of.   The timber was their own and they had a right to cut it.   At all events, though an injunction may lie at the suit of a judgment creditor to restrain future waste, a court of equity has no jurisdiction to decree an account for the waste committed.   None of the cases cited go to that extent.   But, 2.—The suit is without equity under the circumstances.   The complainant sold the premises to Richard S. Harris at a large price and has by the sheriff's sale got

them back again. And the evidence shews that by the acts complained of the property was improved, and came to him worth more than when he sold it. There is no equity to support a decree for an account, even if the Court had jurisdiction for such relief.

JOHNS, SR., CHANCELLOR.—In this case there is now no question to be decided as to the right of having an injunction to prevent waste. It was obtained and has had its designed effect to prevent future wrong, or waste, as it is called. The injunction was permitted to continue, and since it was issued the complainant has obtained the title to the land and the possession.

The complainant, having restrained the commission of further waste, as it is called, now seeks to obtain an account of the waste done for the purpose of thereafter obtaining a decree for the amount of the damages. The question to be decided is whether the Court will decree an account to be taken in such a case as this.

The acts alleged to be done and complained of were done by the persons having at the time the fee simple title to the lands, and the person now claiming an account *then* had no title.

I can find no case in the books to warrant a decree for an account in such a case as this, and am of opinion that the complainant is not entitled to such a decree.

The principle laid down in 1 *Madd. Ch. Pr.* 149, that where an injunction is obtained to prevent a wrong, a court of equity will, in order to prevent a multiplicity of suits, proceed to give full relief, must be understood to apply to those cases where the party has not only a right to the injunction to prevent future wrong, but also to have relief in a court of equity for the wrong previously done. To extend the principles further would bring many cases into chancery, which properly belong to the courts of common law.

The jurisdiction of the Court of Chancery in England has been much enlarged by modern decisions, and if those decisions are to be considered law in this State, they will prostrate the limits fixed by the Act of Assembly, (*Del. Dig.* 103,) to the powers of our Court of Chancery. When it becomes necessary, I shall not hesitate to express an opinion as to the limits of chancery jurisdiction in this State. But in this case that will be unnecessary, because I am of opinion that, even in England, the Court of Chancery would not decree an account and afford relief to this complainant, he having no title to the land at the time when the acts complained of were done by a person who then had the fee simple.

The second ground of defence,—the want of equity in the circumstances,—it is unnecessary to consider.

Bill dismissed with costs.